### IN RE SAVANNA M.*
### (AC 18571)

Lavery, Spear and Daly, Js.

---

[8] Because we affirm the judgment, we will not consider the alternative ground put forth by the defendants.

*In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79-3, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

808

Submitted on briefs September 21—officially released November 23, 1999

*Nicholas A. D'Agosto IV* filed a brief for the appellant (respondent father).

*Richard Blumenthal*, attorney general, and *James D. Moorehead, Susan T. Pearlman* and *Eliot D. Prescott*, assistant attorneys general, filed a brief for the appellee (petitioner).

*Opinion*

DALY, J. This is an appeal by the respondent father[1] from the judgment of the trial court terminating his parental rights with respect to his minor daughter, Savanna, pursuant to General Statutes (Rev. to 1997) § 17a-112 (c) (3) (B) and (D).[2] The respondent claims

---

[1] The respondent mother consented to the termination of her parental rights and has not appealed from the termination judgment. We refer in this opinion to the respondent father as the respondent.

[2] General Statutes (Rev. to 1997) § 17a-112 (c) provides in relevant part: "The Superior Court, upon hearing and notice as provided in sections 45a-716 and 45a-717, may grant a petition filed pursuant to this section if it finds by clear and convincing evidence (1) that the Department of Children and Families has made reasonable efforts to locate the parent and to reunify the child with the parent, unless the court finds in this proceeding that the parent is unable or unwilling to benefit from reunification efforts provided such finding is not required if the court has determined at a hearing pursuant

that the trial court improperly (1) denied his motion to dismiss the petition to terminate his parental rights because the petition failed to plead sufficiently that reasonable efforts were made to reunify him with the child, (2) concluded that the department of children and families (department) had made reasonable efforts to reunify him with the child as required by § 17a-112 (c) (1), (3) found that he had failed to achieve sufficient rehabilitation as would encourage the belief that within a reasonable time he could assume a responsible role in the life of Savanna and (4) concluded that there was no ongoing parent-child relationship, and that to allow more time for establishment of such a relationship would be detrimental to the best interest of the child. We affirm the judgment of the trial court.

The following facts are pertinent to the resolution of this appeal. Savanna was born in April, 1991. The respondent father was arrested the following month and was admittedly not able to parent the child from 1991 to 1994, having been arrested and incarcerated many times due to a drug problem as well as psychiatric impairment. While out of jail from February to December, 1994, he refused to take a blood test to determine the paternity of the child and declined to participate in a psychological evaluation or in anger management

to subsection (b) of section 17a-110 that such efforts are not appropriate, (2) that termination is in the best interest of the child, and (3) that . . . (B) the parent of a child who has been found by the Superior Court to have been neglected or uncared for in a prior proceeding has failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, such parent could assume a responsible position in the life of the child . . . [and] (D) There is no ongoing parent-child relationship, which means the relationship that ordinarily develops as a result of a parent having met on a day to day basis the physical, emotional, moral and educational needs of the child and to allow further time for the establishment or reestablishment of such parent-child relationship would be detrimental to the best interest of the child . . . ."

classes. The respondent was then incarcerated from December, 1994, until June, 1996.[3]

On July 31, 1995, Savanna was adjudicated neglected and committed to the custody of the commissioner of children and families (commissioner).[4] Her commitment was extended until November 1, 1998. On January 17, 1997, the petition for termination was filed against both the mother and the respondent and was granted on May 15, 1998.

I

The respondent's first claim is that the trial court improperly denied his motion to dismiss for lack of subject matter jurisdiction because the commissioner failed to check the box on the preprinted termination of parental rights form that designates whether the department made reasonable efforts to reunify the child with the parent.

Before addressing this claim, we note that subject matter jurisdiction is the power of the court to hear and determine cases of the general class to which the proceedings in question belong. *In re Felicia D.*, 35 Conn. App. 490, 495, 646 A.2d 862, cert. denied, 231 Conn. 931, 649 A.2d 253 (1994). General Statutes (Rev. to 1997) § 17a-112 (c) provides in relevant part: "The Superior Court . . . may grant a petition filed pursuant to this section if it finds by clear and convincing evidence (1) that the Department of Children and Families has made reasonable efforts to locate the parent and to reunify the child with the parent, unless the court finds in this proceeding that the parent is unable or unwilling to benefit from reunification efforts provided

[3] Since the respondent's release from his latest incarceration, he has made progress, taking medications and attending Alcoholics Anonymous meetings. In addition, he is engaged to a woman with an eight year old daughter.

[4] In August, 1996, the respondent filed for a paternity test and was determined subsequently to be the father of the child.

such finding is not required if the court has determined at a hearing pursuant to subsection (b) of section 17a-110 that such efforts are not appropriate . . . ."

It is axiomatic that in seeking to terminate parental rights, the commissioner must prove by clear and convincing evidence that the department made reasonable efforts to reunify the parent and child as required by § 17a-112 (c) (1). See *In re Eden F.*, 250 Conn. 674, 695 n.23, 741 A.2d 873 (1999). We also note that "[t]he statutory criteria must be strictly complied with before termination can be accomplished. *In re Juvenile Appeal (Docket No. 9489)*, 183 Conn. 11, 13, 438 A.2d 801 (1981); *In re Juvenile Appeal (Anonymous)*, [177 Conn. 648, 672, 420 A.2d 875 (1979)]." *In re Michael M.*, 29 Conn. App. 112, 119, 614 A.2d 832 (1992).

"We are also cognizant, however, of the presumption in favor of upholding a trial court's ruling . . . and the nonbinding effect of clerical defects where notice has otherwise been effectively given." (Citation omitted.) Id., 119–20. Although the commissioner did fail to check the box on the termination petition representing that the department made reasonable efforts toward reunification, the succeeding paragraphs of the petition alleging abandonment; lack of personal rehabilitation; denial of care, guidance and control by acts of omission or commission; and no ongoing parent-child relationship provided the respondent adequate notice of the proceedings against him. Moreover, the court entered an order on October 17, 1997, extending Savanna's commitment to April 1, 1998, and stated: "Said child . . . having been committed, it is the best interest of said child . . . to extend the commitment, and the court further finds that continuing efforts to reunify the child . . . with the family are not appropriate." On the basis of the foregoing, we conclude that the respondent had adequate notice of the grounds on which the commis-

sioner was proceeding and, therefore, the court properly denied the motion to dismiss.

## II

The respondent next claims that the trial court improperly concluded that the department had made reasonable efforts to reunify Savanna with him. We disagree.

"On appeal, our function is to determine whether the trial court's conclusion was legally correct and factually supported. We do not examine the record to determine whether the trier of fact could have reached a conclusion other than the one reached . . . nor do we retry the case or pass upon the credibility of the witnesses. . . . Rather, on review by this court every reasonable presumption is made in favor of the trial court's ruling. . . . [W]e will disturb the findings of the trial court in both the adjudication and disposition phases only if they are clearly erroneous." (Internal quotation marks omitted.) *In re Tabitha T.*, 51 Conn. App. 595, 599, 722 A.2d 1232 (1999).

" 'Before a termination of parental rights can be granted, the trial court must be convinced that the department has made reasonable efforts to reunite the [child with the] family. The term reasonable efforts was recently addressed by this court: Turning to the statutory scheme encompassing the termination of the parental rights of a child committed to the department, the statute imposes on the department the duty, inter alia, to make reasonable efforts to reunite the child or children with the parents. The word reasonable is the linchpin on which the department's efforts in a particular set of circumstances are to be adjudged, using the clear and convincing standard of proof. Neither the word reasonable nor the word efforts is, however, defined by our legislature or by the federal act from which the requirement was drawn. . . . [R]easonable

efforts means doing everything reasonable, not everything possible. . . . [Id., 600]." (Internal quotation marks omitted.) *In re Antony B.*, 54 Conn. App. 463, 474–75, 735 A.2d 893 (1999). " 'The trial court's ruling on this issue should not be disturbed on appeal unless, in light of the evidence in the entire record, it is clearly erroneous. *In re Tabitha P.*, 39 Conn. App. 353, 361, 664 A.2d 1168 (1995).' *In re Jessica B.*, 50 Conn. App. 554, 565–66, 718 A.2d 997 (1998)." *In re Tabitha T.*, supra, 51 Conn. App. 600.

Here, the court found that the respondent's incarceration, lack of personal initiative, mental condition and substance abuse rendered him unable to have visitation with the child or to benefit from reunification during the early years of her life. The department's efforts toward reunification for the first three years of the child's life were principally with the mother, with the knowledge and approval of the respondent. Even in recent years, the respondent did not offer himself as a resource for Savanna until well after the commencement of these proceedings. We agree with the trial court that there was clear and convincing evidence that the department did everything it reasonably could to reunify the respondent with his daughter, and that it was the conduct of the respondent that led to the failure of those efforts.

### III

The respondent next claims that the trial court improperly found that he had failed to achieve sufficient rehabilitation as would encourage the belief that within a reasonable time he could assume a responsible role in the life of the child pursuant to § 17a-112 (c) (3) (B).

"Personal rehabilitation as used in the statute refers to the restoration of a parent to his or her former constructive and useful role as a parent. . . . Section 17a-112 requires the trial court to analyze the respondent's

rehabilitative status as it relates to the needs of the particular child, and further, that such rehabilitation must be foreseeable within a reasonable time. . . . A determination by the trial court . . . that the evidence is clear and convincing that the parent has not rehabilitated herself will be disturbed only if that finding is not supported by the evidence and [is], in light of the evidence in the whole record, clearly erroneous." (Citation omitted; internal quotation marks omitted.) *In re Tricia A.*, 55 Conn. App. 111, 115–16, 737 A.2d 974 (1999).

Here, the court found that although the respondent, while incarcerated, took advantage of available substance abuse programs offered for his rehabilitation, his failure to maintain a relationship with Savanna prior to incarceration as well as his continuing mental health problems operated to displace him as a possible parent figure. The court found that giving him additional time to attempt rehabilitation would not likely bring his performance as a parent within acceptable standards and that, even if the respondent could achieve sufficient personal rehabilitation, the child had already been in placement for far too long—more than four years—and required immediate permanent placement. She also had indicated that she wanted a family and did not want to live with the respondent. We have consistently held that allowing a child to languish in foster care is not in the child's best interest. *In re Drew R.*, 47 Conn. App. 124, 131, 702 A.2d 647 (1997). We are not persuaded, therefore, that the trial court's finding that the respondent had failed to achieve sufficient personal rehabilitation was clearly erroneous.

IV

The respondent claims finally that the trial court improperly found that there was no ongoing parent-child relationship within the meaning of § 17a-112 (c)

(3) (D) and that to allow further time for the establishment of such a relationship would be detrimental to the best interests of Savanna. We disagree.

"[Section 17a-112 (c) (3) (D)] requires the trial court to make a two-pronged determination. First, there must be a determination that no parent-child relationship exists, and, second, the court must look into the future and determine whether it would be detrimental to the child's best interests to allow time for such a relationship to develop." *In re Michael M.*, supra, 29 Conn. App. 128.

Our Supreme Court has stated that "[i]t is reasonable to read the language of 'no ongoing parent-child relationship' to contemplate a situation in which, regardless of fault, a child either has never known his or her parents, so that no relationship has ever developed between them, or has definitely lost that relationship, so that despite its former existence it has now been completely displaced." *In re Juvenile Appeal (Anonymous)*, supra, 177 Conn. 670. "In considering whether an ongoing parent-child relationship exists, the feelings of the child are of paramount importance. . . . The ultimate question is whether the child has no present memories or feelings for the natural parent. . . . Feelings for the natural parent connotes feelings of a positive nature only. . . . An ongoing parent-child relationship is one that develops as a result of a parent having met on a continuing, day-to-day basis the physical, emotional, moral and educational needs of the child . . . ." (Citations omitted; internal quotation marks omitted.) *In re Kezia M.*, 33 Conn. App. 12, 21, 632 A.2d 1122, cert. denied, 228 Conn. 915, 636 A.2d 847 (1993).

The fact that the respondent had some contact with Savanna did not preclude the court from finding that there had been no ongoing parent-child relationship for a period in excess of one year. See id. During the first

five years of Savanna's life, the respondent was incarcerated or psychiatrically or chemically impaired. He was physically, emotionally and spiritually unavailable to the child as a parent figure. Jamshid Marvasti, a child psychiatrist, testified that Savanna had no positive memories of her father. In this case, the department presented ample evidence to satisfy the statutory requirement of the absence of an ongoing parent-child relationship for more than one year.

"To satisfy the second prong [of the analysis], the trial court was required to determine whether it would be in the child's best interest to allow additional time for the establishment of a parent-child relationship. . . . The 'best interest' standard, therefore, does not become relevant until after it has been determined that no ongoing parent-child relationship exists." (Citation omitted.) Id., 22.

The factors to be considered in deciding whether it would be in Savanna's best interest to permit further time for a relationship with her father to develop include (1) the length of stay with her foster parents, (2) the nature of her relationship with her foster parents, (3) the degree of contact maintained with the natural parent and (4) the nature of her relationship to her natural parent. Id., citing *In re Juvenile Appeal (Anonymous)*, supra, 177 Conn. 663. "In addition, the genetic bond shared by a biological parent and his or her child, although not determinative of the issue of the best interest of the child, is certainly a factor to consider. . . . 'The psychological testimony from professionals is rightly accorded great weight in termination proceedings.' *In re Nicolina T.*, 9 Conn. App. 598, 605, 520 A.2d 639, cert. denied, 203 Conn. 804, 525 A.2d 519 (1987)." *In re Kezia M.*, supra, 33 Conn. App. 22. Furthermore, it is well established that a "trial court [is] free to judge the credibility of the expert witnesses." Id., 23.

The court found that Savanna had been in foster care for more than four years, and that she had positive feelings and emotional ties toward her foster parents whom she regarded as her mother and father. In contrast, Savanna harbors negative feelings toward her father. Given those facts, we uphold the court's finding that termination was in the best interest of the child.

The judgment is affirmed.

In this opinion the other judges concurred.