MEMORANDUM OF DECISION
On May 20, 1998, the Department of Children and Families, hereafter "DCF", filed petitions for the termination of the parental rights of Catherine R. and Raymond L. to their two children. Neglect petitions had previously been filed on August 22, 1996, at the time the children were removed from their parents on an order of temporary custody. The children were adjudicated neglected on April 7, 1997 and have remained in foster care for most of their young lives.
A trial on the termination petitions took place on December 8, 1998 and January 12, 1999. (Holden, J.) On January 12, 1999, the court entered an oral decision terminating the mother's rights. No order was made as to the biological father. The matter was continued for decision and then transferred to the Child Protection Session for hearing on May 18, 2000. At that time, the court declared a mistrial. (Quinn, J.) Counsel stipulated that the new trial could be held on the transcripts of the earlier hearings and the exhibits then placed into evidence. The court received one additional exhibit providing more recent information concerning the parents and the children. CT Page 8511
The termination petitions allege that both parents have failed to rehabilitate so that they could parent their children, who were adjudicated neglected in prior proceedings. Further, the petitions allege that the parents have no ongoing parent-child relationship with them. Connecticut General Statutes § 17a-112 (c)(3)(B) and(D). None of the parents amended the trial. Based on the facts found and for the reasons set forth below, the court finds the grounds for termination of parental rights have been proven by clear and convincing evidence. The court finds that it is in the best interests of the children to terminate their biological parents' rights to them and terminations are ordered.
From the evidence presented, the court finds the following facts:
 A. FACTS 1. Catherine R., the mother.
There is not a great deal of personal background information about Catherine, as she did not provide any to DCF. She is now thirty-two years old. Raymond and Justin are her third and fourth children. Her two older children are also not in her care. She began her relationship with the children's biological father in 1992 and they never married. Any nurturing family life these parents could have provided for their offspring was a casualty of their joint serious, chronic addiction to illegal and mood altering substances, which caused both parents to severely neglect their children. Their drug use caused them to fail to supervise their children, to engage in domestic violence, to physically, emotionally and medically neglect their children and to engage in criminal activity to support their habits.
Raymond and Justin were removed from their mother in 1996, when on August 19, police found her unconscious in her apartment. The children, who were then fifteen months and three years old respectively, were present and were transported with their mother to the hospital, where Catherine threatened to kill, herself if the children were removed from her. As a result of her threat, she was psychiatrically hospitalized. After their removal, expectations were set for her, which she was never able to fulfill.[2] The most important component of the court expectations was a substance abuse assessment and subsequent treatment, which Catherine never completed. Visitation with her children was also extremely inconsistent. She did not refrain from further criminal activity. When not incarcerated for various drug-related crimes,[3] she did not visit with them regularly. She had no contact with DCF from August 28, 1997, upon her release from prison, until March 25, 1998. During that time, she did not visit with her children. She also did not regularly inquire about their welfare nor exhibit any consistent degree CT Page 8512 of interest in them. By March 18, 1998, the court found that further reunification efforts with Catherine and the children were no longer appropriate. She has not had any visitation with them since that time.
2. Raymond L., the father.
The biological father of the children is now thirty-four years old. He is presently married and resides in a home together with his wife and her daughter. While Raymond did not complete high school, he has been gainfully employed as a roofer for some years. He has admitted past alcohol and cocaine use. He also admits that at times he has been impaired at work due to his substance abuse. In late 1997, Raymond contacted the DCF social worker to tell her he was ready to become more involved with his sons. At that time, he requested visits. Prior to that time, he had been visiting with his children sporadically. Despite his stated change in attitude, his behavior did not change. He continued to visit sporadically and engage in drug use. In January, 1998, when tested at the Morris Foundation during a drug evaluation, he tested positive for cocaine. After a short period of time, he stopped visiting with his children and has not visited with them since July 27, 1998.
Raymond completed a twenty-eight day inpatient drug treatment program at Carnes Weeks in 1998, but admitted that he relapsed some weeks after its completion. Because of concerns about his new family, Raymond participated in a substance abuse evaluation again on November 8, 1999. Again, a urine screen showed the presence of cocaine in his system. He was then referred for residential substance abuse treatment, with which he has not complied. He has not inquired about the well-being of his children in over three years and he continues to blame the children's biological mother for the fact that the children are in foster care and that termination petitions are pending. He also has a criminal record, although not as extensive as that of the children's mother. His most recent arrest and conviction was in 1997 for larceny in the 6th degree.
Raymond and both children were evaluated by a court-appointed psychologist, Anthony Campagna on September 4, 1998. His report was completed on October 28, 1998 and was an exhibit before the court. He noted that "the older child recognizes and experiences some bonding with the father." He had two concerns about Raymond, specifically his long-standing history of chemical dependence and therefor his ability to remain sober, as well as his lack of experience in parenting. He expressed concerns about Raymond's ability to deal with sibling rivalry issues, to tailor his responses to the children's individual developmental levels and to cope with the frustrations of parenting.
The evaluator apparently was considering reunification of the children CT Page 8513 with their father and made further recommendations as to what Raymond needed to complete before that might be possible. His recommendations included parenting education, a voluntary out-patient substance abuse treatment program with urine analysis and visitation with his sons for increasing lengths of time. When he testified at trial, on December 8, 1998, Dr. Campagna recommended that Raymond be permitted to continue reunification with his son Raymond Jr., but that his rights to Justin be terminated as there was no meaningful relationship between this child and his biological father. In response to the question as to whether Raymond could, within reasonable psychological probability meet the needs of his children within six months, he stated that "if he's not able to do it within six months, the chances of his doing it are going to diminish sharply from that point."[4] As noted, a year later in 1999, Raymond was still using cocaine and had not managed to deal with his drug addiction. The chances of his rehabilitating so that he could care for either of his sons had indeed sharply diminished, certainly within any timeframe that was consistent with the children's needs for stability.
3. The two children, Raymond, Jr. and Justin.
(a) Raymond, Jr.
Raymond is now seven years old. He has some memories of his family of origin as he was three when he was removed from his mother's care. When he arrived in foster care, he demonstrated considerable difficulties, according to his first foster mother. His social worker testified that he was aggressive, pulling hair, and self-destructive. He was treated for his condition and began to improve. When he first came to school, he had difficulties focusing on tasks and paying attention. For this, he was prescribed Ritalin. Because of some side effects, his medication was changed. He did well in school and in his foster home after an adjustment period. He continues to receive treatment at a hospital behavioral health program and is doing well in this program. In November, 1999, he and his brother were removed from the pre-adoptive home where they were both placed, because of concerns with the foster parents. By the end of November, 1999 they were placed together in a new foster home, to which they have adjusted well.
(b) Justin
Justin is now four. He, like his brother, has adapted well to his new foster home. He has had some discipline problems at times and has also been referred to the partial hospital program for treatment. He will begin preschool soon. DCF has begun the search for another pre-adoptive home for these children, should they be freed for adoption. CT Page 8514
 B. ADJUDICATORY TERMINATION FINDINGS 1. Reasonable Reunification Efforts.
In order to terminate parental rights, DCF must initially show by clear and convincing evidence that DCF "has made reasonable efforts to locate the parent and to reunify the child with the parent unless the court finds in this proceeding. . . ., provided that such finding is not required if the court has determined at a hearing that such efforts are not appropriate." Connecticut General Statutes § 17a-112 (c)(1). The court made those findings for both parents on March 18, 1998 and again on April 5, 1999. The court finds, based on the clear and convincing evidence that both parents had received considerable and reasonable reunification services and efforts prior to those dates. Neither parent was able to make the changes necessary to lead a sober life.
 2. Catherine R.'s Failure to Rehabilitate and her lack of an ongoing parent-child relationship with her children.
The court further finds, by clear and convincing evidence, that as of the adjudicatory date, Catherine had not achieved such a degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of her children, she could assume a responsible position in their lives. Both children were previously adjudicated neglected. a precondition for the application of this statutory ground for termination. Further, "[p]ersonal rehabilitation as used in the statute refers to the restoration of a parent to his or her former constructive and useful role as a parent." Inre Migdalia M., 6 Conn. App. 194, 203, 504 A.2d 532 (1986), see also Inre Juvenile Appeal, 1 Conn. App. 463, 477, 473 A.2d 795 (1984). She was unable to deal with her drug addiction and has not rehabilitated herself so that she could become a useful parent again. Further, the facts and circumstances giving rise to this conclusion have been in existence for more than a year prior to the filing of the termination petition.
The statutory framework requires the court to analyze the parent's rehabilitation "as it relates to the needs of the particular child" and consider if such rehabilitation is foreseeable "within a reasonable time." In re Luis C., 210 Conn. 157, 1167, 554 A.2d 722 (1989), In reHector L., 53 Conn. App. 359, 366-367, ___ A.2d ___ (1999). Because of this requirement that the court predict what may happen within a "reasonable time" after the filing of the termination petition, the court must consider not only her conduct prior to the filing of those petitions, but also her conduct since that time. Catherine has not visited her children, she has not displayed any interest in them and has not been sober. The court concludes from the clear and convincing evidence that CT Page 8515 she has not rehabilitated herself, so that she could parent these children within the reasonably foreseeable future, consistent with these children's needs for permanency.
The second ground for termination of Catherine's parental rights is her failure to have an ongoing parent-child relationship with her children. To succeed on this ground, DCF must show the absence of "the relationship that ordinarily develops as a result of a parent having met on a day to day basis the physical, emotional, moral and educational needs of the child and [that] to allow further time for the establishment or reestablishment of such parent-child relationship would be detrimental to the best interest of the child." Conn. Gen. Statutes § 17a-112
(c)(3)(D); In re Savanna M., 55 Conn. App. 807, 815, 740 A.2d 484
(1999). This ground encompasses a situation in which "regardless of fault, a child either has never known his or her parents, so that no relationship has ever developed between them, or has definitely lost that relationship, so that despite its former existence it has now been completely displaced." In re Juvenile Appeal (Anonymous), 181 Conn. 638,645, 436 A.2d 290 (1980) (internal citations omitted). These children have not seen their mother for years. To the extent they had a relationship with her, the court concludes that it has now been replaced. To wait for more time to pass in order for Catherine to develop such a relationship when she has done nothing to change her life to accommodate her children, is detrimental to the children. The court concludes from the clear and convincing evidence that there is no ongoing parent-child relationship between Catherine and her two children. This ground has also been in existence for more than one year prior to the filing of the termination petitions.
3. The Allegations against Raymond L.
The termination petitions allege that Raymond L. has also failed to rehabilitate so that he could parent his children. The court concludes that this ground has also been proven by clear and convincing evidence. The facts and circumstances giving rise to this conclusion have been in existence for more than one year prior to the filing of the termination petitions. As noted, Raymond has been unable to deal with his drug addiction. He does not see the need for further assistance or inpatient treatment. He has no present ability to care for his two children. Given his past behavior, there is no reason to believe that his behavior will change in the future. Raymond, Jr., and Justin both require permanency and stability in their lives, which their biological father cannot provide them.
The second allegation is that there is no ongoing parent-child relationship between Raymond and his two sons. That ground has been CT Page 8516 proven by clear and convincing evidence as to Justin, the youngest child, based on the testimony of Dr. Campagna. It is less demonstrable as to Raymond, Jr., who still retained a bond with his biological father in 1998. Findings to be made by clear and convincing evidence do not allow the court to speculate. While it is the case that the children do not talk about their father and it is clear that the grounds for abandonment of this child by the father have been met, those are not the pending allegations. The court therefor dismisses this ground as to the father and Raymond, Jr. only.
 C. REQUIRED FINDINGS
The court makes the following factual findings required by Connecticut General Statutes § 17a-112 (e):
(1) Appropriate and timely services were provided by DCF to the family. These included services to benefit the children, referrals for both parents to deal with issues of domestic violence, parenting, anger management and substance abuse. DCF also provided visitation and case management services.
2) As previously noted, the court finds, by clear and convincing evidence, that reasonable reunification services were provided to both parents.
3) The terms of any applicable orders entered into and agreed to by any individual or agency and the extent of fulfillment of those obligations. The court finds that reasonable court expectations were set for the parents and that neither was minimally able to fulfill them.
4) The feelings and emotional ties of the children with respect to the parent, any guardian of the person and any person who has exercised physical care, custody and control of the children for at least one year and with whom the children have developed significant emotional ties. While none of the children has yet been in their present foster home for one year. they have established themselves there. Their memories of their parents are less clear than they were. Neither parent had attempted to maintain contact with the children or inquired about them for a substantial period of time, prior to the time of the hearings in 1998 and 1999.
5) Finding regarding the ages of the children: Raymond is seven and Justin is four.
6) Finding regarding efforts of the parents to adjust their circumstances, conduct or conditions to make it in the best interests of CT Page 8517 the children to return them to their home in the foreseeable future and (A) the extent to which the parents have maintained contact with the children as part of an effort to reunite the child with them, provided that the court may give weight to incidental visitations, communications or contributions and (B) the maintenance of regular contact or communications with the guardian or other custodian of the children. As detailed above, the court finds that none of the parents has made any changes in their lives to accommodate the care and nurturing of these children.
7) Finding regarding the extent to which a parent has been prevented from maintaining a reasonable relationship with the children by the unreasonable act or conduct of the other parent of the children or the unreasonable act of any other person or by the economic circumstances of the parents. No such conduct is noted. DCF took steps for many years to assist this family.
 D. DISPOSITION
In hearing a termination of parental rights case, the court must first determine whether or not the grounds for termination have been proven by clear and convincing evidence. If so, only then may it consider what action is in the best interests of the children at issue. As has been noted:
 "A hearing on a petition to terminate parental rights consists of two phases, adjudication and disposition. In the adjudicatory phase, the trial court determines whether one of the statutory grounds for termination of parental rights exists by clear and convincing evidence. If the trial court determines that a statutory ground for termination exists, it proceeds to the dispositional phase. In the dispositional phase, the trial court determines whether termination is in the best interests of the child." (Citations omitted; internal quotation marks omitted.) In re Danuael D., 51 Conn. App. 829, 835-37, 724 A.2d 546
(1999).
The court has found, in this case, that grounds for termination of the parental rights have been proven by clear and convincing evidence. The court has made the seven statutory findings required, which all weigh in favor of termination being in these children's best interests.
The court concludes, from the clear and convincing evidence in this case, that there is no biological parent who will be able to care for CT Page 8518 these children. The court further concludes, from the clear and convincing testimony, that these two boys require permanency and stability to grow and prosper. Permanent placement or adoption by a family that understands and can accommodate their special needs is the avenue most likely to accomplish permanency for them. The court finds that termination of their parents's rights to them is in the best interests of Raymond L. Jr., and Justin L.
Based on the foregoing, the court orders a termination of the parental rights of Catherine R. and Raymond L. to their two sons. The Commissioner of the Department of Children and Families is hereby appointed the children's statutory parent. The court also orders that a permanency plan for these terminated children be submitted within sixty days. A review plan for them shall be filed in accordance with state and federal law.
Barbara M. Quinn, Presiding Judge Child Protection Session