MEMORANDUM OF DECISION
On March 24, 2000, the Department of Children and Families, hereafter "DCF," filed a petition for the termination of the parental rights of Maria R. and Jose Luis R. to their son, Luis R. On September 1, 2000, Maria R. consented to the termination of her parental rights and her consent was accepted by the court. The petition was then amended to reflect her consent. The biological father, the termination petition alleges, has no ongoing parent-child relationship with Luis and to allow further time for the development of such a relationship would not be in Luis's best interests. Connecticut General Statutes § 17a-112 (j)(3) (D). The trial on the various claims of the parties began and ended on February 13, 2001. For the reasons stated below, the court grants the petition for termination of the parental rights of Maria R. and Jose Luis R.
From the evidence presented, the court finds the following facts:
 A. FACTS
Jose Luis R. and Maria R.[2] lived together for about nine years from 1981 to 1990. On November 13, 1988, their only child, Luis R., was born. Maria R. suffered from mental illness and she and Jose R. were often involved in domestic violence. After their separation, in May, 1991, Jose came into the apartment where Maria and her son were living. Maria told him he could not stay long and that she was involved with someone else. Nonetheless, Jose remained in the home several hours, trying to convince her to resume their relationship. After a period of time, he assaulted and raped her. Jose was then arrested and convicted of sexual assault, burglary, assault and unlawful restraint. After his guilty plea, he was sentenced to spend twenty years incarcerated. He has remained incarcerated from 1991 to the present time and his earliest release date is in 2006, when Luis will be over eighteen years old.
Luis continued to reside with his mother until 1996 when he was removed from his mother on January 25, 1996. She had neglected and sexually abused Luis. On May 21, 1996, Luis was adjudicated a neglected child and committed to the care and custody of DCF. He remained in foster care until April 17, 1998 when he returned to the care of his mother. A little less than a year later, Luis, on February 26, 1999, returned to foster care. He was placed in a therapeutic foster home and has been in the same foster home since that time.
CT Page 3835
Luis had no contact with his biological father until 1997, when his father requested visits. There were two visits with Jose in prison in May and June, after which time the visits ceased because Luis did not wish to attend them and his therapist supported his refusal. Luis again had monthly prison visits with his father from February 1999 to August of 1999. During this period of time; he began to act out in his foster home and stated that he was afraid to visit with his father. In August, 1999 visits were again suspended as Luis reported that he did not like to visit his father and he was intimidated during visits. He has also reported that he recalls his father hitting his mother when he was small. His therapist again supported him in his position to end the monthly prison visits and DCF did end the visits.
Luis continues to see his mother. The DCF social worker reported that he has a "parentified" relationship with his mother and he worries about her health, as she has a life-threatening illness. He also has made it clear that while he wishes to remain with his foster family, he does not wish to be adopted unless and until his mother's illness runs its expected course. His foster family is prepared to retain him as a permanent foster child or adopt him, whatever he may desire, if he is freed for adoption.
Luis's foster mother testified that when Luis came into her family home in 1999, he was placed in special education in a self-contained classroom. Now he has been mainstreamed and while problems remain, he is doing much better. She noted that when he first came, he was fearful and afraid of the dark. He was angry and wanted to take weapons to the school. While in school, he would swear at his teachers and hit them. "He does not do these things anymore," she noted.
She stated that he is part of her family and gets along well with her grown daughter and her children. She also added that she and her husband are willing to support Luis in whatever he wants to do. She noted that he wants to continue to visit with his mother. She also stated that if Luis wanted to see his father, she would not object. "He can see his mother and father at any time he wants to." She stated that he is adamant that he does not want to see his father. Luis has said that if he had to go and live with his father, he would do anything he could to get away — even hijack a plane. He has said to her he "hated his father's guts."
Luis's treating therapist also testified concerning his feelings about his father. She had seen Luis a total of 19 times. In her opinion, Luis requires permanency and that it was in his best interests to remain in his present placement. She stated that he does not have an ongoing parent-child relationship with his biological father. He has not expressed CT Page 3836 a desire to visit his father or talked about past visits. He has only expressed negative feelings and anger about his father.
 B. ADJUDICATORY TERMINATION FINDINGS 1. Reasonable Reunification Efforts.
In order to terminate parental rights, DCF must initially show by clear and convincing evidence that it "has made reasonable efforts to locate the parent and to reunify the child with the parent, unless the court finds in this proceeding that the parent is unable or unwilling to benefit from reunification efforts, provided such a finding is not required if a court has determined at a hearing. . . . . . . . such efforts are not appropriate." Connecticut General Statutes § 17a-112
(j)(1) The court does find, from the clear and convincing evidence, that reasonable reunification efforts had been made for Jose. Those efforts were of necessity limited due to his incarceration. DCF provided case management and visitation services. The court notes that Luis attended Tier I and Tier II alcohol addiction programs while incarcerated as well as an anger management program. He has never had any individual counseling. In addition, the court notes that the records reflect that on March 15, 2000, the court found reunification efforts were no longer appropriate. (Mack, J.). Jose testified at trial. From his testimony, the court concludes, by clear and convincing evidence, that Jose is unable and unwilling to benefit from reunification services.
2. Adjudicatory findings
The statutory termination ground alleged is that Jose has no ongoing parent-child relationship with Luis. To succeed on this ground, DCF must show the absence of "the relationship that ordinarily develops as a result of a parent having met on a day to day basis the physical, emotional, moral and educational needs of the child and [that] to allow further time for the establishment or reestablishment of such parent-child relationship would be detrimental to the best interest of the child." Conn. Gen. Statutes § 17a-112 (j)(3)(D); In re Savanna M.,55 Conn. App. 807, 815, 740 A.2d 484 (1999). This ground encompasses a situation in which "regardless of fault, a child either has never known his or her parents, so that no relationship has ever developed between them, or has definitely lost that relationship, so that despite its former existence it has now been completely displaced." In re JuvenileAppeal (Anonymous), 181 Conn. 638, 645, 436 A.2d 290 (1980) (internal citations omitted).
The court finds that this ground has been established by clear and convincing evidence. While Luis knows his father, he does not view him as CT Page 3837 his parent, the person who supplies his daily needs. To wait for more time to pass in order for his father to develop such a relationship with him when Luis does not want this, is detrimental to him.
 C. REQUIRED FINDINGS
The court makes the following factual findings required by Connecticut General Statutes § 17a-112 (k):
(1) Appropriate and timely services were provided by DCF to the family. These include services to benefit Luis as well as referrals for Maria to deal with issues of parenting and therapy in addition to substance abuse. DCF also provided visitation and case management services to the parents.
2) As previously noted, the court finds by clear and convincing evidence, reasonable reunification efforts were made by DCF and that Jose L.R. was unable and unwilling to benefit from them.
3) The terms of any applicable orders entered into and agreed to by any individual or agency and the extent of fulfillment of those obligations. The court finds that reasonable court expectations were set for Maria in the neglect proceedings. None were set for Jose, due to his incarceration.
4) The feelings and emotional ties of the child with respect to the parent, any guardian of the person and any person who has exercised physical care, custody and control of the child for at least one year and with whom the child has developed significant emotional ties. Luis is bonded to his foster family where he has been for two years. He retains only negative feelings about his biological father.
5) Finding regarding the age of the child: Luis is twelve years old. He will be thirteen this November.
6) Finding regarding efforts of the parents to adjust their circumstances, conduct or conditions to make it in the best interests of the child to return him to their home in the foreseeable future and (A) the extent to which the parents have maintained contact with the child as part of an effort to reunite the child with them, provided that the court may give weight to incidental visitations, communications or contributions and (B) the maintenance of regular contact or communications with the guardian or other custodian of the child. As detailed above, the court finds that Jose has not understood the needs of this child and could not care for him for another four years, upon his expected release from incarceration. CT Page 3838
7) Finding regarding the extent to which a parent has been prevented from maintaining a reasonable relationship with the child by the unreasonable act or conduct of the other parent of the child, or the unreasonable act of any other person or by the economic circumstances of the parents. No such conduct is noted. DCF took steps for years to assist this family. It is Jose's criminal conduct which made him unavailable to parent his child.
 D. DISPOSITION
In hearing a termination of parental rights case, the court must first determine whether or not the grounds for termination have been proven by clear and convincing evidence. If so, only then may it consider what action is in the best interests of the child at issue.
 "A hearing on a petition to terminate parental rights consists of two phases, adjudication and disposition. In the adjudicatory phase, the trial court determines whether one of the statutory grounds for termination of parental rights exists by clear and convincing evidence. If the trial court determines that a statutory ground for termination exists, it proceeds to the dispositional phase. In the dispositional phase, the trial court determines whether termination is in the best interests of the child." (Citations omitted; internal quotation marks omitted.) In re Danuael D., 51 Conn. App. 829, 835-37, 724 A.2d 546
(1999).
The court has found that the grounds for termination of the parental rights of the biological parents of Luis have been proven by clear and convincing evidence. The court has made the seven statutory findings required, which all weigh in favor of termination being in this child's best interests. The court concludes, from the clear and convincing evidence that Luis should not wait any longer for permanency.
The court finds that Jose R. is not in a position to care for Luis in the near future. The foster family is where Luis has done well. Given his special needs, he should not be moved again and required to form new attachments. Our courts have noted the "deleterious effect of prolonged temporary care of abused and neglected children." In re Juvenile Appeal(84-CD), 189 Conn. 276, 455 A.2d 1313 (1983). In addition, "[b]ecause of the psychological effects of prolonged termination proceedings on young children, time is of the essence . . ." In re Alexander V.,25 Conn. App. 741, 748, 596 A.2d 930 (1992). The court concludes, from CT Page 3839 the clear and convincing testimony, that it is in Luis's best interests that his parents' rights to him be terminated.
The court therefore orders that a termination of parental rights enter with respect to Maria R. and Jose L.R. The court appoints the Commissioner of the Department of Children and Families as the statutory parent. The court approves the present plan to let the course of any further legal steps such as adoption depend upon future unknown events and Luis's wishes The court further orders that a permanency plan for Luis and a review plan for him be filed in accordance with state and federal law.
Barbara M. Quinn, Presiding Judge Child Protection Session