MEMORANDUM OF DECISION
On May 15, 2000 the Department of Children and Families (DCF) filed a petition to terminate the parental rights of Eden M and Willie H as to their daughter Ebony.[2] Respondent mother and respondent father were served with the petition and both were represented by counsel throughout the court proceedings. This court has jurisdiction in this matter and CT Page 7159 there is no pending action affecting custody of the child in any other court. The sole statutory ground alleged for both respondent parents is a failure to rehabilitate. The parental rights termination trial commenced on April 26, 2001 and concluded on May 9, 2001.[3]
Ebony was born on May 1997. At the time of the child's birth respondent mother was incarcerated on criminal charges and the newborn was discharged from the hospital to a maternal aunt. Mother assumed care of Ebony upon her discharge from corrections in September of 1997. Ms. M moved into the Three Judges Motel in October of 1997 and refused all services offered by DCF. In January of 1998 Ms. M acquired new criminal charges and tested positive for illegal substances. Through either probation or parole Ms. M was placed in Quinlin cottage, an alternative incarceration program for women with their babies. In March of 1998 respondent mother agreed to become an informant for the F.B.I. For her protection and for the protection of the other clients, Ms. M. was removed from Quinlin cottage and placed back into prison. DCF obtained an Order of Temporary Custody for Ebony and filed neglect petitions.
On October 29, 1998 the respondent mother admitted that Ebony was uncared for due to homelessness. The case was continued for trial regarding disposition. Testimony was heard on various dates in early 1999. On April 19, 1999, the court Alander, J. committed Ebony to DCF for a period not to exceed twelve months.[4] Specific steps were ordered for both respondent parents at the time of disposition.[5]
According to state's exhibit D, Ms. M and Mr. were arrested for domestic violence in 1996. DCF testified that in the fall of 1998 there was further domestic violence between the two respondent parents. As a result of the 1998 domestic violence arrest Ms M was incarcerated for approximately a month and ultimately placed on three years probation.[6]
ADJUDICATION
The record, by clear and convincing evidence reflects that DCF made reasonable efforts to locate the parents. Respondent mother's various residences with family, The Three Judge Motel, multiple substance abuse facilities and with respondent father are well chronicled by DCF. Similarly, DCF remained in consistent contact with Mr. H.
DCF has also proven by clear and convincing evidence that reasonable efforts were made to reunify Ebony with her parents.[7]
Respondent mother's underlying issues are: (1) long standing substance abuse, (2)transient living conditions, (3) episodic domestic violence incidents and (4) difficulty managing her anger. Respondent father's CT Page 7160 issues centered around his chronic enabling of Ms. M in her substance abuse and its accompanying lifestyle. Mr. H is unable or unwilling to separate himself from Ms. M to become an independent caregiver to Ebony.
Respondent mother has made valiant but tragically unsuccessful efforts to address her substance abuse issues. DCF made multiple referrals for Ms. M Respondent mother entered three in patient programs (Quinlan cottage, Amethyst House, CVH Star Program) and was referred to out patient services at The APT Foundation and the Central Treatment Unit (CTU). Repeated appointments were missed and rescheduled. Throughout 1999 to the present Ms. M continues to test positive for cocaine. DCF consistently reminded Ms. M of her need for domestic violence, anger management and individual counseling. Other than counseling received as part of the forty five day in patient treatment program at CVH in 2000, respondent mother has not to date received any such counseling or therapy.
Ms. M threatened or phsycially assaulted two of the three DCF social workers assigned to the case from 1998 to January of 2001, at which time it was transferred to the permanency unit of DCF. Initially visits between Ebony and her parents were conducted at DCF. After a physical confrontation between Ms. M and a DCF worker the supervised visits were relocated to Southern Connecticut University. The parents were to have separate visits with Ebony because Ms. M monopolized the visits and did not give Mr. H ample opportunity to interact with Ebony.[8] There was a lot of stress, tension, jealousy in the joint visits with Ebony. Both parents were substantially consistent with the visits. Ms. M would however, attempt to encroach on Mr. H's visitation time and on occasion cause a disruption. Mr. H would remain passive and not intervene.
Subsequent to his denied motion to become sole custodian of Ebony prior to the April 1999 commitment, Mr. H has never presented himself to DCF as a potentially independent resource for Ebony. Mr. H did comply with the requisite substance abuse evaluation at St. Raphael's in June of 1999. He did not comply with the required domestic violence counseling. DCF told Mr. H that he needed counseling to help him figure out his relationship with Ms. M and why he kept giving her money when he knew it was being used to purchase cocaine. Mr. H told DCF that he had no issues and therefore needed no referrals. No counseling was obtained.
Failure to Rehabilitate
Statutory grounds exists to terminate parental rights when: "the child has been found by the Superior Court . . . to have been . . . uncared for in a prior proceeding [and the parent] has failed to achieve such degree of personal rehabilitation as would encourage the belief that within a CT Page 7161 reasonable time, considering the age and needs of the child, such parent could assume a responsible position in the life of the child." C.G.S. § 17a-112 (j)(3)(B)(i). In analyzing a respondent parent's rehabilitative status the court must look at the status as it relates to the particular child, and such rehabilitation must be foreseeable within a reasonable time. In re Roshawn R., 51 Conn. App. 44, 54-55 (1998).
As previously stated Ms. M has attempted to address her cocaine addiction. In October of 1999 respondent mother went to Amethyst House, an in patient substance abuse program. She left the program in November of 1999 without successfully completing the program.[9] There were a series of outpatient referrals made for Ms. M but she failed to follow through with appointments and continued to test positive for illicit substances.
To her credit Ms. M enrolled herself into an in patient program (STAR) at Connecticut Valley Hospital (CVH) on November 21, 2000. She successfully completed the forty five day treatment program and was released in January of 2001.[10] DCF made follow up referrals for respondent mother with C.T.U./A.P.T (out patient drug abuse programs). Ms. M was not compliant and tested positive for cocaine nine days after being discharged from the STAR program at CVH. In March of 2001 respondent mother enrolled herself in MAAS, an out patient substance abuse program. A urine was taken and an appointment was made for admission into the day program. Three separate appointments were set for admission. All three appointments were missed by Ms M the last one being in May of 2001.
In October of 2000 Mr. Logan Green conducted psychological evaluations on both respondent parents. Dr. Green testified that: "(A)s long as Ms M uses cocaine than cocaine is going to affect her parenting abilities. She will not be available emotionally for Ebony and not be able to raise Ebony properly if she continues with cocaine abuse."
Dr. Green also determined that Ms. M"is experiencing a moderately severe mental disorder. . . .she is likely to attempt to appease others without a true feeling of "meaning it' and to be suffering with a histrionic personality disorder with personality features. . . .She, then is likely to be somewhat socially undependable and exhibit a tendency toward exploitation and irresponsible behavior. . . . Her inability . . . to delay gratification is likely to be associated with capricious moodiness and a relatively minimal regard for whatever consequences ensue from her behavior. . . . (S)he might be typically undependable and that her surface affability may be punctuated by abrupt and angry outbursts." (State's exhibit A, pp. 7-8). Dr. Green concluded that from the time Ms M admits that she has a cocaine problem she needs at least two years of CT Page 7162 treatment. When Dr. Green saw Ms. M in October of 2000 she was no where near ready to admit the depth of her cocaine addiction. In Dr. Green's opinion Ms M also needs one and one half years of weekly ongoing therapy to address her personality disorder.
In determining whether DCF has proven by clear and convincing evidence the statutory ground upon which it seeks termination of parental rights a court must look at the process of rehabilitation in light of the child's age and needs. Ebony has spent over three of her four years of life in foster care. Ms. M had the opportunity to engage in three in patient programs, two of which, (Amethyst House and Quinlin cottage) offered the option, if feasible, of having Ebony reside with Ms. M as well as a myriad of out patient programs. As late as March of 2001 Ms. M. attempted but failed to obtain ongoing drug treatment. In addition to her significant substance abuse issue, Ms. M has emotional and psychological issues, including anger management, which have never been addressed. It is not in Ebony's best interest for her to continue in the limbo of foster care waiting to see if respondent mother will ever effectively address her outstanding issues. In re Savanna M., 55 Conn. App. 807, 814 (1999).
Mr. H was raised in poverty but attended college on a football scholarship, received good grades and graduated from college. Mr. H owned his own pawn shop and his only documented criminal behavior was the domestic violence incidents between himself and Ms. McKen and a drug arrest for which he received accelerated rehabilitation. Mr. H has kidney failure for which he requires dialysis.
Dr. Green determined that Mr. H suffers from poor self esteem. Mr. H enables Ms. M in her drug use by financing it. According to Dr. Green, "Mr. H harbors a strong sense of duty to obey and to follow others. This may typify his social relationships and may afford some understanding with regard to, what would appear to be, enabling behavior toward Ms M. Furthermore he is likely to be unassertive and this could lead him to seek persons who might take advantage of him." (State's exhibit A, p. 12).
Upon Ms. M's discharge from the CVH in patient program in January of 2001 she began once again to reside with Mr. H in his multi dwelling residence. Mr. H did participate in a substance abuse evaluation at St. Raphael's Hospital in 1999. No treatment was recommended. Mr. H has kept all appointments with DCF. Mr. H was required to attend a domestic violence program but delayed going for even an initial intake appointment until May 8, 2001, in the midst of trial. Mr. H testified that as a result of Dr. Green's evaluation he had begun Alanon classes.
The critical question before this court is whether Mr. H could, with CT Page 7163 further time, establish a separate life from Ms. M and become the sole parental caretaker of Ebony. Inherent in such responsibility would be to keep Ebony protected from Ms. M. The reality is that the respondent parents have been and will continue to be a couple. Until Ms. M's drug and psychological issues are effectively addressed she is not a suitable parent to Ebony. Mr. H's decision to stay with Ms. M, despite her continued drug use and treatment failure, indicates that Mr. H will continue to enable Ms. M in her detrimental lifestyle. It is not in Ebony's best interest to remain in foster care to wait to see if there is any change in her parents' destructive and maladaptive lifestyle.
The statutory ground of failure to rehabilitate as to both Ms. M and Mr. H has been proven by clear and convincing evidence.
DISPOSITION
In the dispositional phase of a termination case, the court must consider whether DCF has proven by clear and convincing evidence that "termination is in the best interest of the child." C.G.S. § 17a-112
(j)(2). In the present case this court finds that it is in Ebony's best interest to terminate the parental rights of Ms. M and Mr. H.
The seven guidelines in C.G.S. § 17a-112 (k) must be considered in arriving at the decision to terminate parental rights.
(1) This court must look at the timeliness, nature and extent of sevices offered, provided and22 made available to the parent and child by an agency to facilitate the reunion of the child with the parent. As indicated previously, a multiple of substance abuse treatment programs, including three in patient programs were accessed by Ms. M. Nonetheless she continues to abuse cocaine. DCF was diligent in their attempt to offer equal visitation to both parents and attempted to direct Mr. H to seek professional counseling to gain insight into his dysfunctional relationship with Ms. M and his enabling her to continue in her drug use. Both parents were unable or unwilling to take advantage of the various services.
(2) DCF has made reasonable efforts to reunite the parents with the Ebony pursuant to the federal Adoption Assistance and Child Welfare Act of 1980, as amended. As noted earlier in the opinion DCF worked with Ms. M on trying to find suitable drug treatment programs. Intensive Family preservation services were offered as far back as 1998. They were refused by the parents. Had Mr. H at some point after April of 1999 made himself available as the sole parental caretaker of Ebony, DCF would have been willing to work with him to reunify Ebony with respondent father. Mr. H never terminated his relationship or contact with Ms. M, a prerequisite CT Page 7164 to reunification between father and daughter.[11]
(3) The terms of any applicable court order entered into and agreed to by any individual or agency and the parent, and the extent of which all parties have fulfilled their obligations under such order must also be addressed. Specific steps were court ordered in April of 1999. (State's exhibits B and C). Respondent mother complied with visitation. She did not comply with the individual, anger management and domestic violence counseling. Ms. M entered many out patient and in patient substance abuse programs but continues to ingest cocaine.
Mr. H did submit to a substance abuse evaluation. He did begin to attend Alanon. It was not until May of 2001, during trial, did he begin the process of enrolling into a domestic violence program. He failed to obtain parenting and individual counseling.
(4) The feelings and emotional ties of Ebony with respect to her parents is clearly a positive one. Ms. M and Ebony share a close relationship. Ms. M is appropriate during visits and plays with Ebony and reads to Ebony and Ebony responds positively. Since visits were combined to include both Ms. M and Mr. H, Ms. Fleming, the DCF supervisor testified that most of the interaction occurs between Ms. M and Ebony but that she did not observe Ms. M. interfering in Mr. H's attempt to interact with Ebony.
Ebony however, has also bonded with the foster family. Ebony has been in the same foster home since February of 1999. It is a nurturing environment and the foster family wants to adopt Ebony.
(5) Ebony is now four years old. She has spent over three of her four years of life in foster care. She deserves to leave the limbo of foster care and obtain permanency in adoption.
(6) This court is required to consider the efforts the parent has made to adjust such parent's circumstances, conduct, or conditions to make it in the best interest of the child to return such child home in the foreseeable future, including, but not limited to, (A) the extent to which the parent has maintained contact with the child as part of an effort to reunite the child with the parent, provided the court may give weight to incidental visitations, communications or contributions, and (B) the maintenance of regular contact or communication with the guardian or other custodian of the child.
It is clear that Ms. M and Mr. H took consistent advantage of the weekly supervised visitation schedule, both when it was at DCF and at Southern University. It is also obvious that the respondent parents care CT Page 7165 deeply for their child. Equally as evident however, is Ms. intractable addiction to cocaine and Mr. H's decision to continue to enable Ms. M in her addiction and to stay in a relationship with Ms. M.
(7) Neither respondent parent has been prevented from maintaining a meaningful relationship with Ebony by any unreasonable act or conduct of each other or any other person, agency or economic circumstances. Mr. I-made the decision to maintain a relationship with Ms. M at the cost of not reuniting with Ebony. Cocaine addiction and a failure to follow through on counseling are the factors that prohibit reunification with Ms. M.
CONCLUSION
This court finds, based upon the testimony and evidence presented and a review of the court file that clear and convincing evidence exists that it is in Ebony's best interest to terminate the parental rights of Ms. M and Mr. H. These findings are made after considering Ebony's needs, the length of time she has been in foster care, her need for permanency and the totality of the circumstances surrounding Ebony's young life.
Accordingly, the court hereby grants the termination petitions. The court further orders that the Commissioner of DCF be appointed statutory parent for Ebony. A permanency plan for Ebony shall be submitted to the court within thirty days. A review plan shall be filed in accordance with state and federal law.
Bernadette Conway, Judge.