MEMORANDUM OF DECISION
On April 20, 2001 the Department of Children and Families (DCF) filed petitions to terminate the parental rights of Shanteema P and Jerome H as to their twin sons, Markez and Marquise. Respondent mother and respondent father were served with the petitions. Both parents were represented by counsel throughout the court proceedings. The court has jurisdiction in the matter and there is no pending action affecting custody of the children in any other court. The statutory grounds alleged for both parents in support of the termination petitions are abandonment, failure to rehabilitate and no ongoing parent child relationship. Trial was scheduled for September 19, 2001. Neither parent appeared for the trial and default judgments were entered as to both mother and father. Trial concluded on September 19, 2001.[2]
Respondent parents are veterans of long term foster care.[3] They met while both were residing in the DCF shelter called Douglas House in New Haven. Respondent parents ran from the shelter on several occasions and would call for DCF assistance when they ran out of places to stay.
In 1999 respondent mother, at the approximate age of seventeen years old, became pregnant.[4] One of her previous foster mothers, Ms. Gwendolyn Henderson, agreed to take respondent mother back into her care. Markez and Marquise were born on February 2000. CT Page 14537
Initially, with assistance, Ms. P did well in caring for the twins. In May of 2000, Ms. P left Ms. Henderson's home with the twins to be with Mr. H. On June 11, 2000, DCF received a referral from Yale New Haven Hospital. Ms. Henderson told DCF that she had received a call from Ms. P asking that she come pick up the children. Ms. P admitted to Ms. Henderson that she had no formula and that the babies were sick. Ms. Henderson brought the twins to the hospital, where they were found to be very hungry and one of the twins was suffering from conjunctivitis and an upper respiratory infection.
An order of temporary custody was obtained and neglect petitions were filed. The twins were adjudicated neglected and committed to DCF for a period of one year on August 23, 2000. The commitment was extended for an additional year in July of 2001. On February 26, 2001 the court ruled that continuing efforts to reunify the twins with either parent were no longer appropriate. Ms. Henderson has been the twins' foster mother since June of 2000.
TERMINATION ADJUDICATION
The court makes the following findings of fact by clear and convincing evidence.
DCF made reasonable to locate the parents. Both respondent parents' whereabouts were intermittently unknown to DCF. Ms. P was missing from DCF radar from September 2000 to March 2001, at which point respondent mother called DCF. In September of 2000, Ms. P had been asked to leave The Women in Crisis Shelter for rule violations. DCF had attempted to locate Ms. P by checking with the shelter, checking former addresses and checking with Adult Probation. DCF had sporadic contact with Ms. P from March to July of 2001, but no further contact with her after July of 2001.
Respondent father was whereabouts unknown from July 2000 until November 2000, from November 20, 2000 to February 16, 2001 and from February 16, 2001 until April 17, 2001. Mr. H was in and out of the correctional system for some of the time, both respondent parents were homeless for some of the time.
DCF, held a meeting with both parents in April of 2001 to discuss the termination of parental rights petition. Respondent father appeared cooperative with the plan. Mr. H indicated he was going to Project READ for his G.E.D. and Project MORE for anger management and having urine tested pursuant to criminal court orders. CT Page 14538
Up until February 26, 2001 DCF made reasonable efforts to reunify the twins with the respondent parents. Ms. P was offered weekly visitation with the twins which she took advantage of on only one occasion, the twins' first birthday. DCF offered assistance and! or referrals regarding housing, bus tokens, educational and life skill programing., substance abuse treatment and testing, mental health services and the Department of Social Services.
Mr. H did not make himself available to DCF for most of the latter half of 2000 and the beginning of 2001. Mr. H did have services available to him from probation, Project MORE and MAAS, (Multi Cultural Ambulatory Addiction Services).[5] Mr. H was offered weekly visitation with the twins. His only visit with the boys during the duration of the twins' commitment was at their first birthday party.
STATUTORY GROUNDS
 Abandonment
Connecticut General Statutes § 17a-112(j)(3)(A) provides that a ground for termination exists when "(t)he child has been abandoned by the parent in the sense that the parent has failed to maintain a reasonable degree of interest, concern or responsibility as to the welfare of the child." "Attempts to achieve contact with a child, telephone calls, the sending of cards and fights and financial support are indicia of `interest, concern or responsibility' for the welfare of the child." Inre Migdalia M., 6 Conn. App. 194, 209-09, cert. denied., 199 Conn. 809
(1986). If a parent fails to visit a child and lacks any real interaction with the child and shows no concern for the child's welfare then statutory abandonment exists. Id. at 209.
Respondent parents have had only one visit with the twins since their commitment to DCF in August of 2000. From August of 2000 to March of 2001 respondent mother's whereabouts were unknown. In an April 2001 meeting at DCF, Ms. P indicated she wanted her children back but in May told DCF that one of her foster sister's was interested in caring for the twins and that Ms. P would like the children placed with someone both the children and she knows. From March of 2001 to July of 2001 DCF had sporadic contact with Ms. P but respondent mother had no contact with the twins. Ms. P could have had weekly visits with the twins in the foster home. The only visit kept by Ms. P was for the twins' first birthday party.
Mr. H's whereabouts were often unknown to DCF. Respondent father was intermittently incarcerated in 2000 and again in early 2001 and again in April of 2001. Prior to the one kept visit by the respondent father for CT Page 14539 the twins' first birthday, Mr. H had only two other visits with the twins since their entry into foster care in June of 2000.
Other than the one visit for the twins' first birthday, the respondent parents have not exhibited any degree of interest in the twins, their welfare, nor have they sent cards, gifts or contacted the foster mother. Ms. P and Mr. H have offered no financial support of the twins. Statutory abandonment has been proven by clear and convincing evidence.
Failure to Rehabilitate
Statutory grounds exists to terminate parental rights when: "[the parent] of a child has been found by the superior court to have been neglected or uncared for in a prior proceeding has failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, such parent could assume a responsible position in the life of the child . . ." C.G.S. § 17a-112(j)(3)(B). In analyzing a respondent parent's rehabilitative status the court must look at the status as it relates to the needs of the particular child and such rehabilitation must be foreseeable within a reasonable time. In re Roshawn R., 51 Conn. App. 44,54-55 (1998).
Respondent parents' protracted absences from DCF radar, their failure to visit the twins, their unstable lifestyles, their lack of compliance with services, their unaddressed substance abuse issues and criminal behaviors makes rehabilitation in the foreseeable future highly unlikely.
The children have been in foster care since the age of three and one half months. The court is cognizant that in assessing a parent's failure to rehabilitate, "the trial court's inquiry requires the determination of both the present and past status of the child, and obtaining a historical perspective of the respondents' child caring and parenting abilities." Inre Tabitha P., 39 Conn. 353, 361 (1995).
The twins are presently approximately nineteen months old. It is not simply a matter of waiting until these young respondent parents grow up so that they can then assume parental responsibility of the twins. The respondent parents have had tragic and traumatic lives that have left them scarred and incapable of adequately caring for themselves never mind two babies boys. Both respondent parents have significant needs and outstanding issues that in all probability will never be addressed. The foster care system that failed the respondent parents should not be the same system that their own children should remain in any longer than is absolutely necessary. CT Page 14540
No ongoing Parent/Child Relationship
In determining whether there is any ongoing parent/child relationship, the court must engage in a two prong analysis. First is must determine "(t)hat no parent/child relationship exists, and second, the court must look into the future and determine whether it would be detrimental to the child's best interest to allow time for such a relationship to develop."In re Savanna M., 55 Conn. App. 807, 815 (1999).
The twins are nineteen months old and have been in foster care since they were three and a half months old. There has only been one visit by the parents since August of 2000. Not only is there no parent/child relationship between the twins and the respondent parents there is no relationship. Given the outstanding issues in the lives of the respondent parents, such as a lack of education, unstable housing, unstable or nonexisting employment, mental health issues and respondent parents' involvement in the criminal justice system, allowing further time to elapse to see if a parent/child relationship could be developed is not in the twins' best interests.
DISPOSITION
In the dispositional phase of a termination case, the court must consider whether DCF has proven by clear and convincing evidence that `termination is in the best interest of the child.' It is in the twins' best interest to have the respondents' parental rights terminated.
In accordance with C.G.S. § 17a-112(k) the court makes the following findings:
(1) The court must look at the timeliness, nature and extent of services offered, provided and made available to the parent and child by an agency to facilitate the reunion of the child with the parents. The respondent parents' failure to visit with the twins and to keep their whereabouts known to DCF made it difficult and eventually impossible for DCF to offer the appropriate services to Ms. P and Mr. H. (See footnote 5)
(2) This court find that DCF made reasonable efforts to reunite the parents with the twins pursuant to the federal Adoption Assistance and Child Welfare Act of 1980, as amended. For the reasons set forth previously the court finds that DCF offered appropriate services and sufficient time for the respondent parents to reunify with their children. CT Page 14541
(3) The terms of any applicable court order entered into and agreed to by any individual or agency and the parent, and the extent to which all parties have fulfilled their obligations under such order must also be addressed. There were specific steps court ordered on June 21, 2000. The respondent parents' compliance with the specific steps were minimal to nonexistent. (See State's Exhibit A pp. 14-15, 17-18)
(4) The feelings and emotional ties of the child with respect to the child's parents, any guardian of the child, and any person who has exercised physical care, custody or control of the child for at least one year and with whom the child has developed significant emotional ties must be discussed.
The twins do not know their parents. They are emotionally bonded to their foster mother, Mrs. Henderson, and her extended family. One of Mrs. Henderson's grown daughters, a foster sister of respondent mother, has expressed an interest in adopting the twins. Mr. P wants DCF to place the twins with someone both she and the twins know. Ms. P has indicated to DCF that she would support such a placement for the twins.
(5) The twins are now nineteen months old. They have spent the past almost sixteen months in foster care. They deserve to leave the limbo of foster care and become eligible for adoption.
(6) The efforts the parent has made to adjust such parent's circumstances, conduct, or conditions to make it in the best interest of the child to return such child home in the foreseeable future, including, but not limited to, (A) to reunite the child with the parent, provided the court may give weight to incidental visitations, communications or contributions, and (B) the maintenance of regular contact or communication with the guardian or other custodian of the child has previously been discussed.
The short answer is that there is no `home' to send the twins to. Respondent parents have had only one visit with the twins since August of 2000. Ms. P and Mr. H are struggling on a daily basis to meet their individual basic needs. There has been virtually no contact with the twins or their foster mother. The foreseeable future for respondent parents, even without the responsibility of parenthood, is bleak.
(7) The extent to which a parent has been prevented from maintaining a meaningful relationship with the child by the unreasonable act or conduct of the other parent of the child, or the unreasonable act of any other person or by the economic circumstances of the parent is the final guideline that must be analyzed. CT Page 14542
Neither respondent parent has prevented the other from maintaining a meaningful relationship with the twins. DCF attempted to allow a meaningful relationship to develop between the parents and the twins. Economics was not the downfall in the respondent parents from reunifying with the twins, it is the respondent parents own abusive and neglected childhoods, their youth and their refusal to accept services and treatment that have caused them to have no relationship with their twin babies.
CONCLUSION
Based on the foregoing findings, the court determines that it is in the best interest of both children for a termination of parental rights to enter with respect to the respondent parents. Accordingly, the court hereby grants the termination petitions. The court further orders that the Commissioner of DCF is appointed statutory parent for the twins. The Commissioner shall file with this court within thirty days a written report of efforts to effect a permanent placement for the twins.
Bernadette Conway, Judge of the Superior Court